CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

01/24/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARK L. WEINER, <br><br> *Plaintiff*, <br><br> v. <br><br> ALBEMARLE COUNTY, VIRGINIA, *ET AL.*, <br><br> *Defendants.* | CASE NO. 3:17-cv-00046 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff Mark L. Weiner alleges that he was imprisoned for a crime he didn't commit. After giving Chelsea Steiniger a ride home, Steiniger fabricated a tale in which Weiner abducted her. The local prosecutor—Denise Lunsford—charged Weiner and obtained a conviction, despite holes in Steiniger's story and exculpatory evidence uncovered during an investigation. After Weiner served over two years in prison, Lunsford eventually agreed that the conviction should be vacated, and Weiner regained his freedom.

Weiner sued Lunsford for violating his constitutional rights, but later dropped her from the case. The remaining defendants are Albemarle County and the current Commonwealth's Attorney for the County, Robert Tracci, in his official capacity. They have moved to dismiss.

What happened to Weiner—if it happened as he alleges it—was a grave injustice. But the law does not entitle him to relief against the defendants in this case. Defendant Tracci, as commonwealth's attorney and thus an arm of the state government, is entitled to sovereign immunity under the Eleventh Amendment. Relatedly, because a commonwealth's attorney does not create policy for the *county* government, federal law does not make Albemarle County liable for the constitutional violations alleged here. Defendants' motions will therefore be granted and the case dismissed.

## STANDARD OF REVIEW

To determine whether a complaint states a legal claim, the Court must accept as true all well-plead allegations, draw reasonable inferences in favor of the plaintiff, disregard the Complaint's legal conclusions and arguments, and ensure the plaintiff offers more than a formulaic recitation of the elements. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## FACTS AS ALLEGED

Late on December 12, 2012 into early the next day, Chelsea Steiniger walked home from her boyfriend's apartment. (Amended Complaint ¶ 10 (hereafter "Complaint")). At some point, Plaintiff Mark L. Weiner ("Plaintiff") gave her a ride to her mother's apartment. (*Id*. ¶ 10). Upon arrival, Steiniger "began texting a made-up story to her boyfriend." (*Id*. ¶ 11). She refused to answer her boyfriend's calls, impersonating an imaginary abductor (supposedly Plaintiff) through text messages. (*Id*.). The boyfriend responded that he was calling the police, prompting Steiniger to partially drop her ruse, call him, and claim she had escaped her abductor. She rebuffed her boyfriend's suggestion to call the police. (*Id*.).

Eventually, the boyfriend called the police himself, but Steiniger would not answer the 911 dispatcher's subsequent calls. (Complaint ¶ 12). She also deleted a voicemail from the dispatcher and turned off her phone to obscure her true location. (*Id*.). Nonetheless, police located her, and she persisted with her abduction story. On December 14, Plaintiff was arrested and later charged with abduction with intent to defile. (*Id*. ¶ 8).

At trial, Steiniger stated that Plaintiff incapacitated her with an inhalant and then sent texts on her phone for a 15-minute period. (Complaint ¶ 14). She then maintained she awoke moments later in an abandoned building, recovered her phone, jumped off a balcony, hid in the

woods, and text-messaged her boyfriend. (*Id*.). She further claimed her phone thereafter died, and that she did not check her voicemail or see any calls until she walked out of the woods and charged her phone at home, allegedly at 2:00 a.m.

This testimony was false, and then-commonwealth's attorney Denise Lunsford allegedly knew it to be false. (Complaint ¶ 16). Specifically, pretrial investigation and interviews by an Albemarle County detective with AT&T revealed that Steiniger's phone had not died. In fact, she had used it to exchange several calls with her boyfriend and receive a voicemail from 911, all during the period her phone was supposedly dead. (*Id*. ¶ 16). AT&T's records also revealed that, during the relevant time, Steiniger's phone connected to cell towers near her mother's house but not towers closest to the abandoned building. (*Id*. ¶ 17). Lunsford allegedly instructed two detectives to further investigate the cell tower issue, and both concluded that Steiniger's calls came from near her mother's house, not the abandoned building. (*Id*. ¶ 18).

Purportedly, Lunsford knew these facts yet nonetheless did not try to correct or prevent Steiniger's false or misleading testimony, instead successfully opposing the admission of AT&T's records at trial. (Complaint ¶ 20). She also supposedly withheld from Weiner's trial counsel the two detectives' exculpatory conclusions about cell phone tower locations. (*Id*. ¶ 21).

Further inconsistencies beset Steiniger's tale. The Commonwealth's forensic investigator indicated that GPS evidence showed Weiner was approximately 17 miles from the abandoned building at the time in question. (Complaint ¶¶ 22–23). Lunsford knew this but did not try to correct the record or prevent Steiniger's false testimony.

Moreover, because of the timing of text messages Steiniger admittedly sent herself, she had to claim at trial that she was incapacity quickly by Plaintiff (who then took control of her phone and began sending messages from it) yet was able to rouse herself, somehow retrieve her

phone, and escape, all within a short timeframe. Steiniger claimed Weiner incapacitated her by covering her face with a chemical-doused rag, rendering her unconscious almost instantly. (*Id*. ¶ 25). But no known, available chemical would produce this effect and still have left Steiniger in a state capable of escaping in the manner she described. (*Id*. ¶ 26). Indeed, Lunsford admitted to a newspaper on July 22, 2015 that she was "not sure how it works. I haven't talked to an expert. We were never able to determine what the substance was." (*Id*. ¶ 27). Lunsford also elicited misleading testimony from a nurse that Steiniger had sustained a *right* knee bruise when jumping off a balcony to escape the abandoned building. Lunsford possessed a recorded interview in which Steiniger asserted an injury to her *left* leg. (*See id.* ¶¶ 29–30).

Ultimately, Plaintiff was convicted by a jury in May 2013 and sentenced in June 2015 to 20 years imprisonment, with 12 years suspended. (Complaint ¶¶ 31, 33). In July 2015, Lunsford joined Plaintiff's motion to vacate his conviction, which the Albemarle County Circuit Court granted; Weiner's charge was dismissed and he was released from jail. (*Id*. ¶ 34).

The Complaint contains two claim for "violation of 42 U.S.C. § 1983" that mention Plaintiff's due process right to a fair trial. (Complaint ¶¶ 35–49). Plaintiff's opposition brief indicates he means these claims to be based on *Brady* and *Giglio* violations. (Dkt. 28 at 8). He also includes a state law claim for intentional infliction of emotional distress.

## ANALYSIS

### I. The Constitution Grants Defendant Tracci Sovereign Immunity

Defendant Tracci, as mentioned above, was not involved in Plaintiff's prosecution. Instead, he is sued in his current, official capacity because he subsequently became the Albemarle County Commonwealth's Attorney after the events giving rise to this lawsuit. This factors prominently into his arguments for dismissal, especially since Plaintiff seeks damages

and not injunctive or declaratory relief. Complaint, Prayer for Relief ¶¶ A–C; *see Tankersley v. Almand*, 837 F.3d 390, 406 n.6 (4th Cir. 2016) ("official-capacity actions for prospective relief," unlike those for damages, "are not treated as actions against the state" to which sovereign immunity would apply).

Defendant Tracci argues that he is entitled to sovereign immunity because, by virtue of being sued in his official capacity as Commonwealth's Attorney, he is an arm of the Commonwealth of Virginia against whom damages cannot be recovered. (Dkt. 23 at 3–5). Indeed, the Eleventh Amendment to the U.S. Constitution prohibits monetary damages against a state officer sued in his official capacity. *See Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (applying Eleventh Amendment immunity to North Carolina district attorney sued in official capacity). The only question is: In Virginia, is a commonwealth's attorney an officer or arm of the state for Eleventh Amendment purposes?

The Fourth Circuit's cases imply an affirmative answer, although it has never spoken to that precise question in a published opinion. *See Bland v. Roberts*, 730 F.3d 368, 390–91 (4th Cir. 2013) (affirming sovereign immunity against official capacity claims to Virginia sheriff, who—like a commonwealth's attorney—is a state constitutional officer); *Smith v. McCarthy*, 349 F. App'x 851, 855–56, 858 n.11 (4th Cir. 2009) (affirming sovereign immunity for official capacity damages claim against, *inter alia*, Nelson County Commonwealth's Attorney); *Trantham v. Henry Cty. Sheriff's Office*, 435 F. App'x 230 (4th Cir. 2011) (summarily affirming district court's application of sovereign immunity to commonwealth's attorney). And a bevy of federal district court judges in Virginia—at least eight—have squarely held that commonwealth's attorneys are entitled to Eleventh Amendment immunity from official capacity

claims.[1]

Plaintiff has not overcome this great weight of authority. He argues that Eleventh Amendment immunity does not extend to local government officials, which is true, *see Gray v. Laws*, 51 F.3d 426, 431 (4th Cir. 1995), and then asserts that Defendant Tracci is one. To assess whether an officer or entity has a state or local character, the Fourth Circuit considers: (1) whether a judgment would be paid by the state or make it functionally liable; (2) the degree of autonomy from the state; (3); the level of state versus non-state concerns involved, and; (4) how state law treats the officer or entity. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136–37 (4th Cir. 2014).

Focusing on the first factor, Plaintiff suggests that it does not "appear" the Commonwealth pays judgments against constitutional officers out of a risk management plan, and he "presum[es]" that premiums for that plan are not paid by the Commonwealth. (Dkt. 28 at 16). But the payment of judgments against state constitutional officers like a commonwealth's attorney is regulated by a state statutory scheme, with oversight and management directly from state entities using "funds in the state treasury." Va. Code §§ 2.2-1806, 2.2-1839(A), (C)-(E). As stated by then-Magistrate Judge Urbanski:

> The Commonwealth of Virginia funds a risk management plan for constitutional officers, which is administered by the Department of the Treasury's Division of

---

[1] *E.g.*, *Davison v. Plowman*, 247 F. Supp. 3d 767, 770–71, 780–81 (E.D. Va. 2017) (Cacheris, J.); *Epperson v. Payne*, No. 4:16-CV-00050, 2017 WL 1194715, at *3–4 (W.D. Va. Mar. 30, 2017) (Kiser, J.); *Leuenberger v. Spicer*, No. 5:15-CV-00036, 2016 WL 355090, at *8 (W.D. Va. Jan. 28, 2016) (Dillon, J.); *Rashad v. Jenkins*, No. 3:15CV655, 2016 WL 901279, at *5 (E.D. Va. Mar. 3, 2016) (Payne, J.); *Brown v. Caldwell*, No. 7:13CV00553, 2014 WL 4540332, at *6 (W.D. Va. Sept. 11, 2014) (Moon, J.); *Trantham v. Henry Cty. Sheriff's Office*, No. 4:10CV00058, 2011 WL 863498, at *5 (W.D. Va. Mar. 10, 2011) (Kiser, J.), *aff'd,* 435 F. App'x 230 (4th Cir. 2011); *Savage v. Cty. of Stafford, Va.*, No. CIV.A.109CV1328, 2010 WL 1873222, at *3–4 (E.D. Va. May 4, 2010) (O'Grady, J.); *Plaster v. Brown*, No. 6:05 CV 00006, 2005 WL 3021961, at *3–4 (W.D. Va. Nov. 8, 2005) (Urbanski, J.); *Blankenship v. Warren Cty., Va.*, 918 F. Supp. 970, 974 n.4 (W.D. Va.) (Michael, J.).

> Risk Management ("Division"). Va. Code Ann. § 2.2-1839. The plan protects against liability imposed by law for damages against any constitutional officers of the Commonwealth. *Id.* The Division assumes sole responsibility for plan management, compliance and removal, and the State Compensation Board must approve constitutional officers' participation in the risk management plan. *Id.* The Division provides for the legal defense of participating entities, and a trust fund is established for payment of claims covered under such plan. *Id.* Funds are invested into this trust according to Va. Code Ann. § 2.2-1806, which provides for the investment of funds in the state treasury. *Id.* Thus, the Virginia Department of the Treasury is responsible for paying any judgment that may be awarded in this action, as claims are paid from a trust funded by the state treasury.

*Plaster*, 2005 WL 3021961, at *3; *see Savage*, 2010 WL 1873222, at *3–4 (same); *Brown*, 2014 WL 4540332, at *6 (same).[2]

Additionally, as Judge O'Grady—himself a former assistant commonwealth's attorney—explained, even if there is doubt about who pays a judgment against a commonwealth's attorney, the other three sovereign immunity factors (the degree of autonomy from the state; whether the issue is a state or local concern; how state law treats the officer) favor the application of immunity:

> The Commonwealth's Attorney's term, duties, and authority are created by statute. Va. Code Ann. §§ 15.2–1626, 1627. Additionally, the Commonwealth's Attorney's salary is prescribed by and paid by the Commonwealth, and his primary duty is to prosecute violations of state laws. Va Code Ann. §§ 1627, 1627.1. As such, the Court finds that the Commonwealth Attorney and assistant commonwealth's attorneys, like the sheriff and his deputies, are arms of the state

---

[2] In his opposition brief, Plaintiff requests discovery on the issue of who pays for the liability fund and its premiums. (Dkt. 28 at 19). He also subsequently and formally moved for jurisdictional discovery on the issue. (Dkt. 29). This motion is based on Defendant Tracci's introduction of facts outside the pleadings in his reply brief, mainly, a budgetary document purporting to show that state funds pay for the liability pool. Because the Court can resolve the motion facially based on the law and without considering Tracci's factual submissions, the motion for discovery will be denied.

Moreover, the Fourth Circuit has explained that, even assuming the state does not pay a judgment, courts do not give the first factor dispositive weight and should analyze the remaining three factors. *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136–37 n.4 (4th Cir. 2014); *e.g.*, *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). As explained above, even if a judgment would not come from the Commonwealth's coffers, the latter factors would still support a finding of sovereign immunity, so the motion is futile.

and therefore are entitled to Eleventh Amendment immunity when sued in their official capacities.

*Savage*, 2010 WL 1873222, at *4. This conclusion is consistent with more recent statements by the Supreme Court of Virginia emphasizing that constitutional officers are "neither agents of nor subordinate to local government," are "neither hired nor fired by the locality," and "local government has no control over their work performance." *Roop v. Whitt*, 289 Va. 274, 280 (Va. 2015).

Tellingly, Plaintiff has been unable to cite a single case, from any court, holding that a commonwealth's attorney in Virginia is something other than an arm of the state entitled to Eleventh Amendment immunity. The Fourth Circuit has twice affirmed that conclusion in unpublished opinions. It has reached the same result in a published opinion as to another Virginia constitutional officer, sheriffs. And at least eight federal district judges have reached the same conclusion. The Court is in accord with those decisions and declines to chart a contrary course.[3]

---

[3] In briefing, Plaintiff defends his claim against Tracci as "in essence" a "*Monell* claim against the office of the Commonwealth's Attorney" based on an allegedly unconstitutional policy by Lunsford. (Dkt. 28 at 20–21). This argument fails.

First, *Monell* is wholly inapt to Defendant Tracci or his supposed office because that case concerns liability rules for *localities*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978). This Court has previously rejected efforts to "shoehorn" official capacity claims against commonwealth's attorneys into *Monell* claims. *Epperson v. Payne*, No. 4:16-CV-00050, 2017 WL 1194715, at *4 (W.D. Va. Mar. 30, 2017) (Kiser, J.) (citing *Savage v. Cty. of Stafford, Virginia*, No. 1:09-CV-1328, 2010 WL 2520532, at *4 (E.D. Va. June 16, 2010)).

Second, Tracci's "office" is not a defendant in the amended complaint. (Dkt. 16 ¶¶ 1–5).

Third, the Albemarle County Commonwealth's Attorney Office is not a legally cognizable entity capable of being sued, even if a *Monell* claim was otherwise proper against it. "The Virginia Constitution creates, and the Virginia Code empowers, officers—not offices." *Leuenberger v. Spicer*, No. 5:15-CV-00036, 2016 WL 355090, at *8 (W.D. Va. Jan. 28, 2016) (Dillon, J.). Consequently, "[c]ourts have long held that the offices of Virginia constitutional officers are not capable of being sued under Virginia law because they are not legally cognizable entities apart from the officers themselves in their official capacities." *Id.* (compiling cases); *e.g.*, *Easter v. Virginia*, No. 4:05CV162, 2006 WL 5915495, at *2 (E.D. Va. Sept. 5, 2006)

## II. Albemarle County Is Not Liable under § 1983 for a Commonwealth's Attorney's Prosecutorial Misconduct

Turning to the County, its primary contention is that it cannot be held liable for the actions of a commonwealth's attorney because she is not a policymaker for the county government. Before addressing this argument and Plaintiff's responses, it is useful to review the requirements for municipal liability under § 1983, known as *Monell* claims.

### A. *Monell* claims: An overview

*Monell* teaches "that a municipality cannot be held liable solely because it employs a [constitutional] tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *id*. at 663 n.7. But local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by *that body's* officers." *Id*. at 690 (emphasis added). As the Supreme Court summarized:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or *by those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 694 (emphasis added).

Accordingly, "liability attaches only where the decisionmaker possesses final authority to establish *municipal* policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added). There must be "a deliberate choice to follow a course of action" by the "official or officials responsible for establishing final policy with respect

---

(dismissing commonwealth's attorney offices as improper parties incapable of being sued), *aff'd sub nom. Easter v. U.S. Dep't of Health & Human Servs.*, 222 F. App'x 255 (4th Cir. 2007); *see also Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989).

to the subject matter in question." *Id*. at 483.

The question of whether an official had final policymaking authority is one of state law. *Pembaur*, 475 U.S. at 483. But this is not a "categorical, all or nothing" inquiry into whether the official acts for the State or the locality. *Lane v. Anderson*, 660 F. App'x 185, 197 (4th Cir. 2016) (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)). "Rather, the question is whether the [official] was a final policymaker *for the local government* in a particular area, or on a particular issue." *Id*. (emphasis added). The "type of policymaking authority which can invoke § 1983 liability is authority to set and implement general goals and programs of municipal government." *Lytle v. Doyle*, 326 F.3d 463, 472 (4th Cir. 2003). In determining who counts as a locality's final decisionmaker, courts "must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000).

Lastly, "a suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent," so "victory in such an official-capacity suit imposes liability on the entity that [the officer] represents." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (1997) (assessing whether county sheriff was policymaker under *Monell* for the county or for the state).

### B. Commonwealth's attorneys do not make policy for county governments

The County's basic reason for dismissal is simple: "In Virginia, constitutional officers are not departments of or agents of the localities in which they serve." (Dkt. 18 at 2). For instance, in 2015, the Supreme Court of Virginia—albeit in case asking whether a sheriff was a "local employee" under a particular statute—opined on the relationship between state constitutional officers and their localities. *Roop v. Whitt*, 289 Va. 274 (Va. 2015). The *Roop*

– 10 –

Court stated that—unlike localities, which are creatures of the General Assembly that may be endowed or dissolved at its whim—constitutional officers like commonwealth's attorneys:

> are creations of the constitution itself. Va. Const. art. VII, § 4. Their offices exist, abeyant and unfilled, by virtue of constitutional origination from the moment their county or city is created by the legislature. *Their offices and powers exist independent from the local government and they do not derive their existence or their power from it*. Their compensation and duties are subject to legislative control, but only by state statute and not local ordinance.
>
> Consequently, while constitutional officers may perform certain functions in conjunction with local government, *they are neither agents of nor subordinate to local government. The local government has no control over their work performance*. Similarly, constitutional officers are elected by the voters for prescribed terms. They are neither hired nor fired by the locality. They therefore are not local employees.

*Roop*, 289 Va. at 280 (quoting *Carraway v. Hill*, 265 Va. 20, 24 (Va. 2003)) (emphasis added).[4] Virginia has long said that commonwealth's attorneys and other constitutional officers do not hold their offices by virtue of the General Assembly or "authority of a municipality or county." *Hilton v. Amburgey*, 198 Va. 727, 729 (Va. 1957).

What's more, the Virginia Code creates a presumption against a locality's control over a commonwealth's attorney. Va. Code § 15.2-1600(B) (providing that law should not be construed to authorize locality to direct "an elected constitutional officer to exercise a power or perform a duty which the officer is not required to perform under applicable state law," or to "diminish" his "powers or duties," unless she consents to such direction or diminution).

Prior federal cases discussing Virginia law also point in a similar direction. For instance, the Fourth Circuit has rejected a *Monell* claim against Fairfax County for the actions of the

---

[4] Plaintiff tries, unconvincingly, to distinguish *Roop* on the grounds that it only dealt with whether constitutional officers were county employees under a particular statute. That is strictly true, but the key portion of the opinion for our purposes—the part explaining the general nature of constitutional officers' authority and their independence from localities—applies broadly outside of that specific statutory context.

county sheriff in administering the county detention center. *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999). The court held that "there can be no county liability here because" the county had no control over the detention center's "internal administration," which instead was dictated by the State Board of Corrections and executed by the sheriff. *Id*. Since the county had "no control over the policy within the jail, it bears no concomitant responsibility." *Id*. By analogy, Albemarle County has no control over who the commonwealth attorney prosecutes and how she does so.[5]

These authorities all undercut Plaintiff's inferential arguments based on titles and structure of various provisions in the Virginia Constitution. *McMillian*, 520 U.S. at 792 n.7; *see* Va. Const. art VII, §§ 4, 5 (headings entitled "Local Government," "County and city officers," and "county, city, and town governing bodies"), *id*. art. V (providing for state executive branch without explicit mention of commonwealth's attorneys).

Plaintiff's reliance on the Virginia Code fairs no better. While some portions of it do refer to commonwealth's attorneys as "local officer," that term is distinguished from "*employees of local governments*," and the cited sections lack probativeness because they relate to administrative rather than prosecutorial matters. *See* Va. Code §§ 2.2-1204(D) (providing for creation of health insurance plans), 2.2-1207(C) (same for long-term care insurance), 51.5-124.3 (same for retirement). Plaintiff points to a commonwealth's attorney's responsibility to enforce

---

[5]     Federal district courts similarly have held that Virginia constitutional officers, including commonwealth's attorneys, are not policymakers for localities. *E.g.*, *Chien v. Virginia*, No. 1:17-CV-677, 2017 WL 3758716, at *7 (E.D. Va. Aug. 28, 2017) (dismissing *Monell* claim against Virginia constitutional officers because they are "not subject to the local authority of the local government"); *Switzer v. Town of Stanley*, No. 5:11-CV-00021, 2011 WL 6101940, at *2 (W.D. Va. Dec. 7, 2011) (dismissing *Monell* claim against sheriff because, as a constitutional officer, he is "beholden to only the voters and not a Virginia county"); *Savage v. Cty. of Stafford*, No. 1:09-CV-1328, 2010 WL 11527134, at *2 (E.D. Va. Mar. 26, 2010) (dismissing *Monell* claim because commonwealth's attorney "is not an officer or employee of" a county and his actions "are not attributable to the [c]ounty").

"all criminal laws *throughout* the county," Va. Code § 15.2-528, but it seems far more natural to understand this prepositional phrase as simply a territorial limitation on the prosecutor's authority. *See McMillian*, 520 U.S. at 792. And while a commonwealth's attorney is "part" of the local law enforcement, Va. Code § 15.2-1627(B), the above-cited authorities reveal that a locality has no power to direct her prosecutorial actions, and she in turn cannot bind the locality.

The Court is convinced that the issue in this *Monell* claim is akin to *McMillian v. Johnson*, 520 U.S. 781 (1997) (concluding that sheriff is not a county policymaker under Alabama law when he acts in a law enforcement capacity), in which the Supreme Court rejected many of the same arguments raised by Plaintiff here.

First, *McMillian* found significant the fact that Alabama sheriffs are state constitutional officers who had been afforded sovereign immunity by state courts. *McMillian*, 520 U.S. at 787–89. Similarly here, Virginia's commonwealth's attorneys are state constitutional officers, Va. Const. art. VII, § 4, who have immunity from official capacity lawsuits under state law. *See* Va. Code § 8.02-195.3 (providing, notwithstanding other waivers of sovereign immunity, that that "individual immunity" of "attorneys for the Commonwealth" against tort claims for damages is "preserved"); *Daniels v. Williams*, 720 F.2d 792, 797 n.4 (4th Cir. 1983); *Vanderwall v. Virginia*, No. 1:05-CV01341JCC, 2006 WL 6093879, at *8 (E.D. Va. Aug. 9, 2006) (explaining that Va. Code § 8.01-195.3 retains sovereign and common law immunities for specified individuals, like prosecutors, when sued in their official capacities).

Second, like the observation in *Roop* that the Commonwealth's constitutional officers are not agents of or answerable to Virginia localities, an Alabama locality cannot instruct a sheriff how to perform his job. *McMillian*, 520 U.S. at 790.

Third, *McMillian* rejected arguments that the sheriff was a county officer because his

"jurisdiction is limited to the borders of his county" and he "is elected locally by the voters in his county." 520 U.S. at 791. Plaintiff here raises the same arguments that the Supreme Court rebuffed. As the Court observed, state officials often "have limited jurisdictions and are elected locally," an arrangement granting "an element of control . . . to the officials and residents of the county that receives the [officer's] services. *Id*. at 792. The fact that an official must operate *within* a locality does not mean he operates *for or on behalf of* the locality.

Fourth, *McMillian* found "little merit" or "weight" to the positions that (1) some instances in the Alabama code designated the sheriff as a "county official" or "county employee" and (2) a county's insurance policy might cover some claims against the sheriff. *McMillian*, 520 U.S. at 792 n.7. Once again, Plaintiff relies on these discredited lines of reasoning to support his assertion that the commonwealth's attorney is a policymaker for the county.

\* \* \*

Ultimately, the *Monell* claim here involves the prosecution of a state crime (abduction, Va. Code § 18.2-47) by a state constitutional officer (the commonwealth's attorney), who the state supreme court has said "exist[s] independent from the local government," does not derive his "existence" or "power" from it, and is "neither [an] agent[] of nor subordinate to local government." *Roop*, 289 Va. at 280. The commonwealth's attorney brings to bear the weight of the Commonwealth, not Albemarle County. The body of Virginia law and federal cases interpreting Virginia law are in accord. Thus, the claim against the County must be dismissed.

### III. The Intentional Infliction of Emotional Distress (IIED) Claim

Finally, the County argues it is entitled to sovereign immunity against the IIED claim and that Plaintiff failed to give the required statutory notice of it. (Dkt. 18 at 3). Plaintiff concedes that this claim should be dismissed. (Dkt. 28 at 22). Defendant Tracci also has prosecutorial and

sovereign immunity to this claim in his capacity as commonwealth's attorney. *See* Va. Code § 8.01-195.3; *Andrews v. Ring*, 266 Va. 311, 321 (Va. 2003); *see also Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 632 (W.D. Va. 2015) (compiling cases for proposition that "IIED claims are disfavored in Virginia").

## SUMMARY

The facts giving rise to this lawsuit are tragic. A man appears to have been wrongly accused, convicted, and imprisoned based on a fabrication, and the conviction was procured—allegedly—with the prosecutor's knowledge that the criminal case wasn't up to snuff. Nonetheless, the intricacies of federal constitutional actions prevent the case from going forward against the current defendants. The motions to dismiss must be granted and the case dismissed. An appropriate order will issue.

Entered on this __24th__ day of January, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE